IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division



HEZLHER ISAI BANEGAS ORELLANA, )
*et al.*,                                              )
                                                          )
                          Plaintiffs,          )          Civil Action No. 1:18cv1186 (CMH/JFA)
                                                          )
          v.                                        )
                                                          )
SONNY FREEMAN, *et al.*,               )
                                                          )
                          Defendants.         )
_____ )

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on a motion for default judgment filed by plaintiffs

Hezlher Isai Banegas Orellana ("Hezlher Orellana"), Elyn Leonel Lemus Orellana ("Elyn

Orellana"), Olvin Samir Gonzales ("Olvin Gonzales"), and Edgar Javier Mendez Gonzales

("Edgar Gonzales") (collectively "plaintiffs") against defendants Sonny Freeman, Carroll Carter

Freeman, and USMCVP LLC d/b/a Veteran Painting and Contracting  ("USMCVP LLC")

(collectively "defendants").  (Docket no. 33).  Pursuant to 28 U.S.C. § 636(b)(1)(C), the

undersigned magistrate judge is filing with the court his proposed findings of fact and

recommendations, a copy of which will be provided to all interested parties.

## Procedural Background

On September 17, 2018, plaintiffs filed this action against defendants alleging violations

of the Fair Labor Standards Act ("FLSA"), District of Columbia Wage Payment and Collection

Law ("DCWPCL"), and the District of Columbia Accrued Safe and Sick Leave Act ("ASSLA"),

as well as stating a claim for state law breach of contract.  (Docket no. 1) ("Compl.").  On

October 16, 2018, plaintiffs filed three executed returns of service indicating that the process

server served Sonny Freeman and Carroll Carter Freeman, individually and as the registered

agent for USMCVP LLC, by leaving a copy of the summons and complaint with a receptionist at

USMCVP's office location located at 2121 Eisenhower Avenue, Suite 200, Alexandria, Virginia

22314. (Docket nos. 3-5). On October 24, 2018, Monique Miles of Old Towne Associates, P.C.,

entered her appearance on behalf of defendants and filed a consent motion to extend the time to

respond to the complaint along with a memorandum in support. (Docket nos. 6-8). The court

granted the motion to extend the time to respond to the complaint on October 25, 2018, and

required defendants to file a responsive pleading by November 9, 2018. (Docket no. 9).

Defendants filed a motion to dismiss on November 9, 2018 (Docket no. 10) and a

memorandum in support on November 10, 2018 (Docket no. 11), and they noticed the motion for

a hearing on December 7, 2018 (Docket no. 12). Plaintiffs filed an opposition to the motion to

dismiss on November 20, 2018 (Docket no. 13), and the District Judge denied defendants'

motion to dismiss without argument on December 10, 2018 (Docket no. 14). Defendants filed an

answer to the complaint on December 14, 2018. (Docket no. 15).

On January 23, 2019, the District Judge entered a Scheduling Order that opened

discovery and set the discovery deadline as June 14, 2019. (Docket no. 16). Pursuant to the

Scheduling Order, the parties filed a Joint Discovery Plan with the court on February 6, 2019

(Docket no. 17), which the court approved on February 7, 2019 (Docket no. 18). On March 22,

2019, counsel for defendants filed a motion to withdraw from representation of defendants

(Docket no. 19) and a memorandum in support (Docket no. 20), and she waived oral argument

(Docket no. 21). No one filed an opposition to the motion. The District Judge granted the

motion to withdraw as counsel on March 25, 2019. (Docket no. 22).

On April 29, 2019, plaintiffs filed a motion to compel discovery, which asked that the court compel overdue discovery responses from defendants within 10 days, declare their request for admissions be deemed admitted, and prohibit defendants from introducing any facts or documents not timely produced in dispositive motions or at trial. (Docket no. 23). They waived oral argument. (Docket no. 24). Pursuant to Local Civil Rule 7(F)(1), any opposition to the motion to compel was due by May 13, 2019. Defendants did not file an opposition to the motion. On May 14, 2019, the court granted in part plaintiffs' motion to compel, requiring defendants to serve full and complete responses to all of plaintiffs' discovery request by May 31, 2019. (Docket no. 25 at 1). The order warned that, if defendants failed to provide full and complete responses by that date, plaintiffs' request for admissions would be deemed admitted, defendants would be prohibited from introducing any requested documents that had not been produced in a timely manner, and sanctions, including a finding of default and a default judgment, could be imposed. (Docket no. 25 at 1-2). The court mailed a copy of the order to defendants.[1]

On June 11, 2019, plaintiffs filed a motion for entry of default and to continue the final pretrial conference (Docket no. 26), and they noticed the motion for a hearing on Friday, June 28, 2019 (Docket no. 27). The motion stated that defendants never provided full and complete responses to plaintiffs' discovery requests, as required by this court's order. (Docket no. 26 at 1). The certificates of service filed with the motion and the notice of hearing indicated that a copy of the motion and notice were mailed to defendants at the same address at which they were

---

[1] On July 9, 2019, the copies of the order mailed to defendants USMCVP LLC and Carroll Carter Freeman were returned to the court as undeliverable. (Docket nos. 35-36). The mail sent to defendant Sonny Freeman at that same address was not returned to the court as undeliverable. The court mailed a copy of the order to the address at which plaintiffs served defendants. (Docket nos. 3-5). Based on the procedural history of this case, defendants are aware of this action but have not provided the court with new contact information. As such, the court understands the address at which it sent the orders to still be the current and most accurate mailing address for defendants.

originally served.  (Docket no. 26 at 6; Docket no. 27 at 2).  On June 12, 2019, the court entered

an order cancelling the final pretrial conference and instructing defendants to appear before the

undersigned on Friday, June 28, 2019 at 10:00 a.m. to show cause why default should not be

entered against them and why plaintiffs should not be allowed to file a motion for default

judgment.  (Docket no. 29).  In that order, the undersigned explained "that the court will likely

enter a default as requested by the plaintiffs" due to defendants' failure to comply with the May

14 order.  (*Id.*).  The court mailed a copy of that order to defendants.

The undersigned held the hearing on Friday, June 28, 2019.  (Docket nos. 30-31).

Counsel appeared on behalf of plaintiffs, and no one appeared on behalf of defendants.  (Docket

no. 30).  Counsel for plaintiffs stated that they had not received any response or other

communications from defendants as of that date.  The court granted the motion for entry of

default and instructed the Clerk of Court to enter default against defendants.  (Docket no. 31).

The court also directed plaintiffs to file a motion for default judgment, memorandum in support,

and notice of hearing, and to serve each defendant with a copy of the motion, supporting

memorandum, notice of hearing, and *Roseboro* notice.  (*Id.*).  The court mailed a copy of the

order to defendants.  The Clerk of Court entered default against defendants that same day for

failure to plead or otherwise defend.  (Docket no. 32).  On July 1, 2019, plaintiffs filed their

motion for default judgment (Docket no. 33) with a *Roseboro* notice (Docket no. 33-4), and

noticed the motion for a hearing on July 26, 2019 (Docket no. 34).  At the hearing on July 26,

2019, counsel for plaintiffs appeared, but no one appeared on behalf of defendants.

## Factual Background

The following facts are established by the complaint (Docket no. 1) ("Compl."). Sonny Freeman and Carroll Carter Freeman are both residents of Virginia who own and operate USMCVP LLC, a home improvement company organized under the laws of Virginia that perform construction projects in Maryland, Virginia, and the District of Columbia. (Compl. ¶¶ 5-7, 9). USMCVP LLC was not authorized to conduct business in the District of Columbia but did so anyway. (Compl. ¶ 8).

Plaintiff Hezlher Orellana worked for defendants from September 2016 until April 2018, for a total of 83 weeks. (Compl. ¶ 14). He worked six days a week every week, typically working 10 hours per day with a half-hour break for lunch each day. (Compl. ¶ 14). He was paid $250 per day. (Compl. ¶ 14). Sometimes he was paid by the project and other times he was paid by the day. (Compl. ¶ 14). Hezlher Orellana often worked weekends and holidays as well in 2016 and 2017. (Compl. ¶ 14). He did not receive any pay for his last 37 days of work. (Compl. ¶ 14). He also worked 20 hours of overtime hours per week for 83 weeks, and he did not receive any overtime premiums. (Compl. ¶ 16).

Plaintiff Elyn Orellana worked the same hours as his brother, Hezlher Orellana, and received $150.00 per day. (Compl. ¶ 15). He was paid by a single check every 2 weeks. (Compl. ¶ 15). He was not paid for his last 10 days of work. (Compl. ¶ 15). In addition, he worked 20 hours of overtime hours per week for 83 weeks, for which he was not paid an overtime premium. (Compl. ¶ 16).

Plaintiff Olvin Gonzales and Edgar Gonzales both worked for defendants from May 2017 through July 2017. (Compl. ¶ 18). They worked primarily in the District of Columbia. (Compl. ¶ 21). Defendants promised to pay them $150.00 per day. (Compl. ¶ 18). Defendants

5

sometimes paid them by the project, and other times they paid them by the day. (Compl. ¶ 18). They worked Monday through Friday, and they occasionally worked on Saturdays. (Compl. ¶ 18). They took half an hour for lunch each day. (Compl. ¶ 18). Defendants did not pay Olvin or Edgar Gonzales for their last 10 days of work. (Compl. ¶ 18). Plaintiffs worked 12 hours of overtime per week for 17 weeks, and they did not receive any overtime premiums for those days. (Compl. ¶ 19). Olvin and Edgar Gonzales never received or accrued any sick leave while working for defendants. (Compl. ¶ 27).

At all relevant times, defendants had the power to fire plaintiffs and to set plaintiffs' rate of pay. (Compl. ¶¶ 34-35). They did not maintain true and accurate time records or records of how much plaintiffs were paid for their work. (Compl. ¶ 36). Defendants also intentionally failed to provide plaintiffs with itemized statements of the actual numbers of hours worked and amounts paid per hour, intentionally failed to post notice of District of Columbia wage laws, and did not provide plaintiffs with actual or constructive notice of plaintiffs' employee rights. (Compl. ¶¶ 37-39). Defendants were aware that they were legally required to pay plaintiffs the minimum wage, the overtime rate for hours worked in excess of 40 in a work week, and wages owed in a timely manner. (Compl. ¶¶ 40-42). Plaintiffs performed services on a permanent basis exclusively for defendants, did not invest in the facilities and equipment, were told which projects to work on and their rates of pay by defendants, and did not have opportunities for profit or loss on the projects assigned to them. (Compl. ¶¶ 45-48). Plaintiffs did not operate independent business organizations and demonstrated no initiative, judgment, or foresight in open market competition with others required for a claim that they are independent contractors. (Compl ¶¶ 49-50). Instead, they were paid a daily rate as laborers. (Compl. ¶ 49).

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." At the hearing on June 28, 2019, the undersigned found that defendants had failed to participate in discovery or otherwise defend against this action despite repeated warnings that failure to do so may result in a finding of default and default judgment. (Docket no. 31). Based on the failure to plead or otherwise defend against the action, the court entered an order requesting that the Clerk of Court enter default against defendants (*id.*), and the Clerk of Court did so that day (Docket no. 32).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter when necessary to enter or effectuate judgment.

## Jurisdiction and Venue

A court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment. 28 U.S.C. § 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Similarly, 28 U.S.C. § 1337(a) provides that "district courts shall have

original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." The FLSA itself also states that any action to recover unpaid overtime wages may be maintained "in any Federal or State court of competent jurisdiction." 29 U.S.C. § 216(b). Because this action arises from a law of the United States, the FLSA, and further arises from an Act of Congress regulating commerce, this court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337. The court may also exercise supplemental jurisdiction over the remaining state law claims because they arise from a common nucleus of operative fact. *See* 28 U.S.C. § 1367; *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

This court also has personal jurisdiction over defendants. As stated in the complaint, defendants are citizens of Virginia and conduct business in Virginia. (Compl. ¶¶ 5-7, 9). Moreover, defendants did not object to personal jurisdiction in their answer, so have waived any objection. *See* Fed. R. Civ. P. 12(h)(1)(B)(ii). Venue is proper in this court because some of the acts complained of arose in this District, and defendants reside in this District. *See* 28 U.S.C. § 1391(b). For these reasons, the undersigned recommends a finding that this court has subject matter jurisdiction over this action, that this court has personal jurisdiction over defendants, and that venue is proper in this court.

### Service

An individual served within a judicial district of the United States may be served by a method allowed under the state law for serving a party in the state where the district court is located or where service is made, by delivering a copy of the summons and complaint to the individual personally, by leaving a copy at the individual's dwelling or usual place of abode with someone of a suitable age and discretion who resides there, or by delivering a copy to an agent

8

authorized by appointment or law to receive service of process.  Fed. R. Civ. P. 4(e).  Under

Virginia law, if an individual cannot be personally served, a copy of the process may be left with

a family member other than a "temporary sojourner or guest" 16 years or older who lives at the

individual's usual place of abode.  Va. Code Ann. § 8.01-296(2)(a) (2018).  If a party cannot

serve the individual by either of those methods, a party may post process at the front door or

main entrance of the individual's usual place of abode and must mail a copy of the process to the

individual served by posting at least ten days before default judgment is entered and file a

certificate of that mailing with the Clerk of Court.  Id. § 8.01-296(2)(b).  Virginia law allows

service on a corporation "[b]y personal service on any officer, director, or registered agent of

such corporation," or, "[i]f the address of the registered office of the . . . limited liability

company is a single-family residential dwelling, by substituted service on the registered agent . .

. in the manner provided by subdivision 2 of § 8.01-296."  Va. Code Ann. § 8.01-299(1), (3).

Except in divorce and annulment proceedings or where specifically prescribed by statute,

Virginia deems otherwise insufficient service sufficient if the individual to whom process was

directed actually receives the process "within the time prescribed by law."  Id. § 8.01-288.

The executed returns of service filed on October 16, 2018 indicate that a private process

server left a copy of the summons and complaint for each of the defendants with Nicole

Freeman, a receptionist, at 2121 Eisenhower Avenue, Suite 200, Alexandria, Virginia 22314 on

October 4, 2018.  (Docket nos. 3-5).  The record does not establish that Ms. Freeman is an

officer, director, or agent authorized to accept service under either the Federal Rules or Virginia

law, that the address at which the parties were served is individual defendants' usual place of

abode, or that plaintiffs followed any other proper method of substituted service.  However,

counsel for defendants entered an appearance on October 24, 2018, 20 days after copies of the

summons and complaint were left with Ms. Freeman (Docket no. 6), and defendants did not raise insufficient service of process as an affirmative defense in their motion to dismiss or answer (Docket nos. 10-11, 15). The parties had begun litigating the case and discovery was underway when defendants stopped responding to plaintiffs, and defendants were explicitly warned that failure to respond to discovery may result in default judgment. (Docket nos. 25, 29). Based on the foregoing, the undersigned recommends a finding that the procedural history of this case establishes that defendants had notice of and had reviewed the court-issued summons and amended complaint, retained counsel, and actually proceeded in defending against this action. Accordingly, the undersigned recommends that service was accomplished on defendants.

## **Grounds for Entry of Default**

A court may render a default judgment against a party when that party fails to obey an order to provide or permit discovery. Fed. R. Civ. P. 37(b)(2)(A)(vi). Plaintiffs moved to compel discovery responses on April 29, 2019. (Docket no. 23). After defendants failed to file an opposition to that motion, and upon review of the discovery requested, the undersigned entered an order on May 14, 2019 requiring defendants to provide full and complete responses to all the discovery requests by May 31, 2019. (Docket no. 25). The order warned defendants that failure to provide such responses in a timely manner may result in sanctions, including a finding of default and default judgment. (*Id.*). When defendants failed to provide those responses, plaintiffs filed a motion requesting that the Clerk of Court enter default against defendants. (Docket no. 26). In their motion, plaintiffs analyzed the four factors the court must consider in determining which sanctions to impose under Rule 37 and specifically requested that the court declare defendants in default and allow them to file a motion for default judgment. (*Id.*). Plaintiffs noticed the hearing for Friday, June 28, 2019. (Docket no. 27). The following day, the

10

undersigned entered an order summarizing the May 14 order and further warning defendants that "the court will likely enter a default as requested by plaintiffs" at the June 28 hearing. (Docket no. 29). The order instructed defendants to appear before the undersigned at the June 28 hearing to show cause why default should not be entered against them and plaintiffs allowed to file a motion for default judgment. (*Id.*).

At the hearing on June 28, 2019, no one appeared on behalf of defendants, and plaintiffs' counsel represented that defendants had not responded to them in any way between the withdrawal of counsel and that date. Based on those representations and upon review of the motion, the undersigned granted plaintiffs' motion for entry of default and ordered the Clerk of Court to enter default against defendants (Docket no. 31), which it did that same day (Docket no. 32).

Accordingly, the undersigned magistrate judge recommends a finding that defendants failed to comply with the court's order to fully and completely respond to all of plaintiffs' discovery requests, that defendants had notice that failure to fully and completely respond to those requests in a timely manner could result in an entry of default and default judgment against them, and that the Clerk of Court properly entered default against defendants.

### Liability[2]

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Given that a default has been entered, the factual allegations in the complaint are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6).

As alleged in the complaint, defendants knowingly and willfully violated certain provisions of the FLSA and the DCWPCL. (Compl. ¶¶ 12-13, 21, 29-30, 37-42, 57-58, 64-75).

---

[2] Because plaintiffs do not seek recovery under the ASSLA or for breach of contract in their motion for default judgment, the undersigned does not recommend an award on those bases. (Docket no. 33).

As set forth in plaintiffs' motion for default judgment, plaintiffs seek $13,750.00 in unpaid wages ($9,250 for Hezlher Orellana + $1,500 for Elyn Orellana + $1,500 for Olvin Gonzales + $1,500 for Edgar Gonzales), $38,300 in overtime compensation ($20,750.00 for Hezlher Orellana + $12,450.00 for Elyn Orellana + $2,550.00 for Olvin Gonzales + $2,550.00 for Edgar Gonzales), $156,150.00 in liquidated damages ($90,000.00 for Hezlher Orellana + $41,850.00 for Elyn Orellana + $12,150.00 for Olvin Gonzales + $12,150.00 for Edgar Gonzales), $27,068.60 in attorney's fees, and $580.00 in costs. (Docket no. 33 ¶¶ 8-9, 11).

**Violations of the Minimum Wage and Overtime Provisions of the FLSA**

To establish a violation of the FLSA for non-payment of the minimum wage under 29 U.S.C. § 206, plaintiffs must show that: (1) plaintiffs were employed by the defendants; (2) plaintiffs were engaged in commerce or in the production of goods for commerce; (3) plaintiffs were not compensated for all hours worked during each work week at a rate equal to or greater than the then-applicable minimum wage; and (4) none of the exemptions in 29 U.S.C. § 213 applied to the plaintiffs' positions. *See* 29 U.S.C. § 206. For each hour worked in excess of forty hours per week, the FLSA guarantees an employee overtime pay at a rate not less than one and one-half (1.5) times the employee's regular rate of pay. *See* 29 U.S.C. § 207(a).

The facts set forth in the complaint establish that defendants employed plaintiffs. At all relevant times, individual defendants owned and operated corporate defendant, which generated gross revenues exceeding $500,000.00. (Compl. ¶¶ 5-9, 53). Plaintiffs Hezlher Orellana and Elyn Orellana worked for defendants from September 2016 until April 2018. (Compl. ¶¶ 14-15). Defendants paid Hezlher Orellana $250.00 per day for a 10 hour day, which equaled a rate of $25.00 per hour. (Compl. ¶¶ 14, 17). Defendants paid Elyn Orellana $150.00 per day for a 10 hour day, which equaled a rate of $15.00 per hour. (Compl. ¶¶ 15, 17). Plaintiffs Olvin

12

Gonzales and Edgar Gonzales worked for defendants from May 2017 through July 2017. (Compl. ¶ 18). Defendants paid them each $150.00 per day at a rate of $15.00 per hour. (Compl. ¶¶ 18-19). Accordingly, at all times relevant to this action, defendants were plaintiffs' employer for purposes of the FLSA.

Plaintiffs were also employees engaged in commerce under 29 U.S.C. §§ 206 and 207. Plaintiffs worked for defendants, who owned and operated a home improvement company performing construction projects in Maryland, Virginia, and the District of Columbia. (Compl. ¶¶ 9, 14, 18). From September 2016 until April 2018, plaintiffs Hezlher Orellana and Elyn Orellana worked 20 hours of overtime per week. (Compl. ¶ 15). From May 2017 through July 2017, plaintiffs Olvin Gonzales and Edgar Gonzales worked 12 hours of overtime per week. (Compl. ¶ 19). Plaintiffs allege that defendants did not pay them the overtime rate for the hours they worked exceeding forty hours per work week. (Compl. ¶¶ 16, 19). They also allege that defendants failed to pay them for all regular hours worked. (Compl. ¶¶ 15, 18). Specifically, Hezlher Orellana alleges that plaintiffs failed to pay him $9,250.00 in regular wages for his last 37 days of work, and Elyn Orellana, Olvin Gonzales, and Edgar Gonzales allege that defendants failed to pay them each $1,500.00 each in regular wages for their last 10 days of work. (Compl. ¶¶ 14-15, 18). Finally, no evidence has been produced to show that any of the exemptions listed in 29 U.S.C. § 213 apply to plaintiffs, and they appear to be covered employees entitled to the protections of the FLSA. *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 337 (4th Cir. 2008) ("An employer bears the burden of proving that a particular employee's job falls within such an exception.").

The statute of limitations for an FLSA claim is two years. 29 U.S.C. § 255(a). The FLSA extends that statute of limitations to three years for willful violations. *Id.* Plaintiffs'

complaint alleges that defendants willfully violated the FLSA minimum wage and overtime provisions (Compl. ¶¶ 12, 29, 41-42, 57-58), so the three-year statute of limitations applies. Hezlher Orellana and Elyn Orellana allege violations of the minimum wage and overtime provisions of the FLSA from September 2016 until April 2018, and Olvin Gonzales and Edgar Gonzales allege violations of the minimum wage and overtime provisions of the FLSA from May 2017 through July 2017. (Compl. ¶¶ 14-20). They filed their complaint on September 17, 2018, less than three years after the actions underlying all the claims alleged occurred. (Compl.). Therefore, their complaint was timely filed, and plaintiffs are entitled to recovery under the FLSA.

**Violations of the DCWPCL**

The DCWPCL requires that "[w]henever an employer discharges an employee, the employer shall pay the employee's wages earned not later than the working day following such discharge." D.C. Code § 32-1303(1) (2019). If an employee "quits or resigns, the employer shall pay the employee's wages due upon the next regular payday or within 7 days from the date of quitting or resigning, whichever is earlier." Id. § 32-1303(2). For each hour worked in excess of forty hours per week, the DCWPCL also guarantees an employee overtime pay at a rate not less than one and one-half (1.5) times the employee's regular rate of pay. Id. § 32-1003(c).

In their motion for default judgment, all four plaintiffs seek recovery under the DCWPCL. (Docket no. 33 ¶ 8). As an initial matter, the facts set forth in the complaint neither allege nor establish that plaintiffs Hezlher Orellana or Elyn Orellana satisfy the requirements of the DCWPCL. The facts alleged about Hezlher Orellana and Elyn Orellana's employment do not mention where they worked. (Compl. ¶¶ 14-17). The only cause of action plaintiffs raise in their complaint regarding violations under the DCWPCL relate to "plaintiff Olvin Samir

14

Gonzales and plaintiff Edgar Mendez Gonzales only." (Compl. ¶¶ 60-66). Accordingly, an award of unpaid wages under the DCWPCL in favor of Hezlher Orellana and Elyn Orellana is inappropriate, and the undersigned analyzes defendants' liability under the DCWPCL for plaintiffs Olvin Gonzales and Edgar Gonzales only.

Defendants employed plaintiffs Olvin Gonzales and Edgar Gonzales within the meaning of the DCWPCL. The District of Columbia defines an "employer" as "every individual, partnership, . . . association, [or] corporation . . . employing any person in the District of Columbia." D.C. Code § 32-1301(1B). A person is considered an employee in the District of Columbia when he is "suffered or permitted to work by an employer" and "regularly spends more than 50% of their working time in the District of Columbia." *Id.* §§ 32-1003(b)(1), 32-1301(2). Defendants conducted business in the District of Columbia, and Olvin Gonzales and Edgar Gonzales worked for defendants on projects primarily in the District of Columbia. (Compl. ¶¶ 8-9, 18). Accordingly, at all times relevant to this action, defendants employed plaintiffs as employees in the District of Columbia as defined by the DCWPCL.

Defendants also failed to pay plaintiffs wages owed in the time required under the DCWPCL. In the District of Columbia, "wages" are defined as "all monetary compensation after lawful deductions, owed by an employer." D.C. Code. § 32-1301(3). This includes unpaid regular and overtime wages. *Id.* The undersigned has already recommended a finding that defendants failed to pay plaintiffs both regular and overtime wages. Although the complaint does not make clear whether plaintiffs were discharged or resigned, defendants had, at most, 7 days to pay the unpaid wages and failed to do so. *See id.* § 32-1303(1)-(2). Therefore, defendants have not timely paid plaintiffs for wages owed under District of Columbia law.

15

Finally, an individual bringing an action under the DCWPCL must do so within three years after the cause of action accrued. *Id.* § 32-1308(c)(1). Olvin Gonzales and Edgar Gonzales worked for defendants from May 2017 through July 2017. (Compl. ¶ 18). They filed their complaint on September 17, 2018, less than three years after the violations took place. (Compl.). Therefore, their complaint was timely filed, and plaintiffs Olvin Gonzales and Edgar Gonzales are entitled to recovery for both unpaid and overtime wages under the DCWPCL as well.

## **Measure of Damages**

**Unpaid Wages under the FLSA and the DCWPCL**

### *Hezlher Isai Banegas Orellan*

Plaintiff Hezlher Orellana seeks an award of $9,250.00 in unpaid regular wages for the last 37 days for which he worked but was never paid. (Compl. ¶¶ 14-15; Docket no. 33 ¶ 8). That amount aligns with the hourly rate defendants paid Hezlher Orellana and number of hours Hezlher Orellana worked, as alleged in the complaint ($25.00 per hour x 10 hours per day x 37 days). (Compl. ¶¶ 14-15). Accordingly, the undersigned recommends an award of **$9,250.00** in unpaid regular wages for Hezlher Orellana.

Plaintiff also seeks $20,750.00 in unpaid overtime wages for 83 weeks from September 2016 until April 2018 based on defendants' failure to pay an hourly rate of 1.5 times his regular rate of pay for hours worked over forty in a work week. (Compl. ¶¶ 14, 16-17; Docket no. 33 ¶ 8). Plaintiff calculates the unpaid wages based on a rate of $25.00 per hour. (Compl. ¶ 17). Based on that hourly rate, plaintiff was entitled to an overtime premium of $37.50 per hour ($25.00 per hour x 1.5), or an additional $12.50 per hour ($25.00 x 0.5). Instead, defendants paid plaintiff $25.00 per hour worked and did not pay plaintiff any overtime compensation.

16

(Compl. ¶¶ 14, 16-17).  Plaintiff also states that he worked 20 hours in overtime hours per week but never received the overtime premium.  (Compl. ¶ 16).  Therefore, plaintiff is entitled to unpaid overtime wages for 83 weeks in the amount of $20,750.00 (83 weeks x 20 hours per week x $25.00 x 0.5).

Accordingly, the undersigned recommends an award of unpaid regular and overtime wages under the FLSA for Hezlher Orellana in the total amount of **$30,000.00** ($9,250.00 in unpaid regular wages + $20,750.00 in unpaid overtime wages).

### *Elyn Leonel Lemus Orellana*

Plaintiff Elyn Orellana seeks an award of $1,500.00 in unpaid regular wages for the last 10 days for which he worked but was never paid.  (Compl. ¶ 15; Docket no. 33 ¶ 8).  That amount aligns with the hourly rate defendants paid Elyn Orellana and number of hours Elyn Orellana worked, as alleged in the complaint ($15.00 per hour x 10 hours per day x 10 days).  (Compl. ¶ 15).  Accordingly, the undersigned recommends an award of **$1,500.00** in unpaid regular wages for Elyn Orellana.

Plaintiff also seeks $12,450.00 in unpaid overtime wages for 83 weeks from September 2016 until April 2018 based on defendants' failure to pay an hourly rate of 1.5 times his regular rate of pay for hours worked over forty in a work week.  (Compl. ¶¶ 15-17; Docket no. 33 ¶ 8).  Plaintiff calculates the unpaid wages based on a rate of $15.00 per hour.  (Compl. ¶ 17).  Based on that hourly rate, plaintiff was entitled to an overtime premium of $22.50 per hour ($15.00 per hour x 1.5), or an additional $7.50 per hour ($15.00 x 0.5).  Instead, defendants paid plaintiff $15.00 per hour worked and did not pay plaintiff any overtime compensation.  (Compl. ¶¶ 15-17).  Plaintiff also states that he worked 20 hours in overtime hours per week but never received

the overtime premium.  (Compl. ¶ 16).  Therefore, plaintiff is entitled to unpaid overtime wages

for 83 weeks in the amount of $12,450.00 (83 weeks x 20 hours per week x $15.00 x 0.5).

Accordingly, the undersigned recommends an award of unpaid regular and overtime

wages for Elyn Orellana under the FLSA in the total amount of **$13,950.00** ($1,500.00 in unpaid

regular wages + $12,450.00 in unpaid overtime wages).

### *Olvin Samir Gonzales*

Plaintiff Olvin Gonzales seeks an award of $1,500.00 in unpaid regular wages for the last

10 days for which he worked but was never paid.  (Compl. ¶ 18; Docket no. 33 ¶ 8).  That

amount aligns with the hourly rate defendants paid Olvin Gonzales and number of hours Olvin

Gonzales worked, as alleged in the complaint ($15.00 per hour x 10 hours per day x 10 days).

(Compl. ¶¶ 18-19).  Accordingly, the undersigned recommends an award of **$1,500.00** in unpaid

regular wages for Olvin Gonzales.

Plaintiff also seeks $2,550.00 in unpaid overtime wages for 17 weeks from May 2017

through July 2017 based on defendants' failure to pay an hourly rate of 1.5 times his regular rate

of pay for hours worked over forty in a work week.  (Compl. ¶¶ 18-19; Docket no. 33 ¶ 8).

Plaintiff calculates the unpaid wages based on a rate of $15.00 per hour.  (Compl. ¶ 19).  Based

on that hourly rate, plaintiff was entitled to an overtime premium of $22.50 per hour ($15.00 per

hour x 1.5), or an additional $7.50 per hour ($15.00 x 0.5).  Instead, defendants paid plaintiff

$15.00 per hour worked and did not pay plaintiff any overtime compensation.  (Compl. ¶¶ 18-

19).  Plaintiff also states that he worked 12 hours in overtime hours per week but never received

the overtime premium.  (Compl. ¶ 19).

It was not possible for plaintiff to work for 17 weeks between May 2017 and July 2017

because there were only 13 weeks during that time period.  Therefore, plaintiff is entitled to

unpaid overtime wages for 13 weeks in the amount of $1,170.00 (13 weeks x 12 hours per week x $15.00 x 0.5) because that is the time period established by the complaint.[3]  (Compl. ¶ 18).

Accordingly, the undersigned recommends an award of unpaid regular and overtime wages for Olvin Gonzales under both the FLSA and the DCWPCL in the total amount of **$2,670.00** ($1,500.00 in unpaid regular wages + $1,170.00 in unpaid overtime wages).

### *Edgar Javier Mendez Gonzales*

Plaintiff Edgar Gonzales also seeks an award of $1,500.00 in unpaid regular wages for the last 10 days for which he worked but was never paid. (Compl. ¶ 18; Docket no. 33 ¶ 8). Again, that amount aligns with the hourly rate defendants paid Edgar Gonzales and number of hours Edgar Gonzales worked, as alleged in the complaint ($15.00 per hour x 10 hours per day x 10 days). (Compl. ¶¶ 18-19). Accordingly, the undersigned recommends an award of **$1,500.00** in unpaid regular wages for Edgar Gonzales.

Plaintiff also seeks $2,550.00 in unpaid overtime wages for 17 weeks from May 2017 through July 2017 based on defendants' failure to pay an hourly rate of 1.5 times his regular rate of pay for hours worked over forty in a work week. (Compl. ¶¶ 18-19; Docket no. 33 at 8). Plaintiff calculates the unpaid wages based on a rate of $15.00 per hour. (Compl. ¶ 19). Based on that hourly rate, plaintiff was entitled to an overtime premium of $22.50 per hour ($15.00 per hour x 1.5), or an additional $7.50 per hour ($15.00 x 0.5). Instead, defendants paid plaintiff $15.00 per hour worked and did not pay plaintiff any overtime compensation. (Compl. ¶¶ 18-19). Plaintiff also states that he worked 12 hours in overtime hours per week but never received the overtime premium. (Compl. ¶ 19).

---

[3] The signed affidavit submitted by plaintiff Olvin Gonzales with the motion for default judgment also states that he worked for 17 weeks between May 2017 and July 2017. (Docket no. 33-1 at 3).

As explained earlier, it was not possible for plaintiff to work for 17 weeks[4] between May 2017 and July 2017, and plaintiff is instead entitled to unpaid overtime wages for 13 weeks in the amount of $1,170.00 (13 weeks x 12 hours per week x $15.00 x 0.5).  (Compl. ¶ 18).

Accordingly, the undersigned recommends an award of unpaid regular and overtime wages for Edgar Gonzales in the total amount of **$2,670.00** ($1,500.00 in unpaid regular wages + $1,170.00 in unpaid overtime wages).

**Liquidated Damages under the DCWPCL**

Under the laws of the District of Columbia, when an employer discharges an employee but fails to pay the employee's wages no later than the working day following the discharge, or when the employer fails to pay the employee's wages within either 7 days or the next regular pay day after an employee has quit or resigned, the employer is liable for the smaller of 10 percent of the unpaid wages for each working day during which it fails to pay or an amount equal to treble the unpaid wages.  D.C. Code § 32-1303(1)-(2), (4).  The undersigned has recommended a finding that plaintiffs Edgar Gonzales and Olvin Gonzales are entitled to recovery under § 32-1301(1) or (2) of the DCWPCL.  Because defendants have violated those provisions as to these two plaintiffs, the undersigned also recommends a finding that defendants are liable to Edgar Gonzales and Olvin Gonzales for liquidated damages under the DCWPCL.  Based on the dates of employment and the amounts owed to plaintiffs in unpaid wages, defendants are liable for treble the unpaid wages for plaintiffs Olvin Gonzales and Edgar Gonzales.  Therefore, the undersigned recommends an award of liquidated damages for Olvin Gonzales and Edgar Gonzales in the total amount of amount of **$16,020.00** (($2,670.00 x 3 for Olvin Gonzales) + ($2,670.00 x 3 for Edgar Gonzales)), or $8,010.00 per plaintiff, under the DCWPCL.

---

[4] The signed affidavit submitted by Edgar Gonzales with the motion for default judgment states that he worked for 17 weeks between May 2017 and July 2017 as well.  (Docket no. 33-1 at 4).

For the same reasons the undersigned does not find that defendants are liable to plaintiffs Hezlher Orellana and Elyn Orellana for wage violations under the DWCPCL, an award of liquidated damages in favor of those two plaintiffs under District of Columbia law is not appropriate.

## Liquidated Damages under the FLSA

Although defendants Hezlher Orellana and Elyn Orellana are not entitled to liquidated damages under the DCWPCL, they are entitled to liquidated damages under the FLSA.[5] (Compl. ¶ 59). In FLSA cases, employees are routinely awarded liquidated damages equal to the amount of unpaid wages. *See* 29 U.S.C. § 216(b); *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1118 (4th Cir. 1985). However, an employer can avoid the imposition of liquidated damages upon a showing "that the act or omission giving rise to [the] action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA. 29 U.S.C. § 260. In this case, the undersigned has recommended a finding that defendants violated the FLSA as to these plaintiffs, and the employer has failed to appear and present any defense to plaintiffs' claim of violations of the FLSA. (Compl. ¶¶ 51-59). Therefore, an award of liquidated damages equal to the amount of regular and overtime wages is appropriate. Accordingly, the undersigned recommends an award of liquidated damages in favor of plaintiffs Hezhler Orellana and Elyn Orellana in the amount of **$43,950.00** ($30,000.00 for Hezhler Orellana + $13,950 for Elyn Orellana).

---

[5] Because the undersigned has already recommended an award of liquidated damages in favor plaintiffs Olvin Gonzales and Edgar Gonzales under the DCWPCL that is greater than the award of liquidated damages available under the FLSA, the undersigned limits the recommended liquidated damages award under the FLSA to plaintiffs Hezlher Orellana and Elyn Orellana.

**Attorney's Fees and Costs**

The FLSA provides for the mandatory award of reasonable attorney's fees and costs of an action. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). The DCWPCL requires that the court to award costs and attorney's fees for any judgment in favor of employees, and that it calculate those fees in accordance with the *Laffey* matrix adopted by *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000). D.C. Code § 32-1308(b)(1). The court must use the rates as "updated to account for the current market hourly rates for attorney's services." *Id*; (Docket no. 33-3); *cf. Salazar v. District of Columbia*, 809 F.3d 58, 63-65 (D.C. Cir. 2015) (affirming a fee award based on the Legal Services Index ("LSI")-adjusted *Laffey* matrix in light of other evidence provided); *Makray v. Perez*, 159 F. Supp. 3d 25, 48 (D.D.C. 2016) (recognizing that § 32-1308(b)(1) "adopted the *Salazar*/LSI Matrix as a means of calculating recoverable attorneys' fees in actions to enforce various wage and hour laws.").

Plaintiffs request attorney's fees based on the LSI-adjusted *Laffey* matrix pursuant to § 32-1308. (Docket no. 33 ¶ 11). In support of their claim for attorney's fees, plaintiffs submitted a copy of the LSI-adjusted *Laffey* matrix (Docket no. 33-3) and an affidavit of Matthew T. Sutter (Docket no. 33-2). The affidavit submission reflects a total of $27,068.60 in attorney's fees and $580.00 in costs. (Docket no. 33-2 ¶¶ 3-5). The attorney's fees consist of 37.7 hours of attorney time at $718.00 per hour for Mr. Sutter. (*Id.* ¶¶ 3-4). Mr. Sutter's normal hourly billing rate is $425.00 per hour. (*Id.* ¶ 1). The costs associated with this matter include the filing fee ($400.00) and service of the complaint and summons on defendants ($180.00). (*Id.* ¶ 5).

22

As already discussed, only two of the four defendants have established violations of the DCWCPL. Accordingly, the undersigned recommends an award of attorney's fee at the rate established by the LSI-adjusted *Laffey* matrix, pursuant to § 32-1308, for those hours worked on tasks related to plaintiffs Olvin Gonzales and Edgar Gonzales, either when those tasks were done separate from or jointly with tasks related to Hezlher Orellana and Elyn Orellana. Based on the affidavit submitted by Mr. Sutter, plaintiffs are entitled to 35.2 hours of attorney's fees under the DCWPCL for work performed on behalf of Olvin Gonzales and Edgar Gonzales at a rate of $718.00 per hour, for a total of $25,273.60 ($718.00 per hour x 35.2 hours). There are three itemized time entries totaling 2.5 hours that reflect meetings with Hezlher Orellana and Elyn Orellana only,[6] and those fees are recoverable under the FLSA. For those hours, the undersigned finds that Mr. Sutter's fees at his normal billing rate of $425.00 are reasonable,[7] for a total of $1,062.50 ($425.00 per hour x 2.5 hours). Therefore, the undersigned finds that an award in the total amount of $26,336.10 is appropriate. The undersigned also believes that the costs associated with this matter are reasonable.

Based on the foregoing, the undersigned recommends a finding that plaintiffs are entitled to recover **$26,916.10** in attorney's fees and costs (consisting of $26,336.10 in attorney's fees and $580.00 in costs).

---

[6] These are the meetings on June 19, 2018, July 6, 2018, and August 22, 2019. (Docket no. 33-2 ¶ 3).

[7] This submission does not comply fully with the standards set forth in *Grissom v. The Mills Corp.*, 549 F.3d 313, 320–23 (4th Cir. 2008), *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990), and *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978), for establishing a reasonable fee award. Under those cases, the relevant inquiry is whether the fees charged are comparable with the prevailing market rates of other local lawyers familiar both with the skills of the fee applicants and the type of work in the relevant community; here, Northern Virginia. *Plyler*, 902 F.2d at 278. However, because defendants have not contested the requested amount of fees in this case, the court will accept the allegations set forth by plaintiffs concerning the reasonableness of these fees as true. The total amount of the fees requested is consistent with fees incurred in similar cases and awarded by this court.

## Conclusion

For these reasons, the undersigned magistrate judge recommends that a default judgment be entered in favor of plaintiffs Hezlher Isai Banegas Orellana, Elyn Leonel Lemus Orellana, Olvin Samir Gonzales, and Edgar Javier Mendez Gonzales and against defendants Sonny Freeman, Carroll Carter Freeman, and USMCVP LLC in the amount of $**136,176.10** ($49,290.00 in unpaid wages + $59,970.00 in liquidated damages + $26,336.10 in attorney's fees + $580.00 in costs).

## Notice

By means of the court's electronic filing system and by mailing a copy of this proposed findings of fact and recommendations to defendants Sonny Freeman, Carroll Carter Freeman, and USMCVP LLC, through its registered agent Carroll Carter Freeman, at 2121 Eisenhower Avenue, Suite 200, Alexandria, Virginia 22314, the parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

ENTERED this 26th day of July, 2019.

/s/

John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia